**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

| | | |
|---|---|---|
| **IN RE: 20' DRAINAGE EASEMENTS** | ) | |
| **IN SUBDIVISION OF BREWER'S CREEK** | ) | Case No.: 2:23-cv-409 |
| | ) | |
| Serve: Robert W. Jones, Esq. | ) | |
| ISLE OF WIGHT COUNTY | ) | |
| 17000 Monument Circle | ) | |
| Windsor, Virginia 23487 | ) | |

**CLASS ACTION COMPLAINT**

Putative Class Action Plaintiffs Vincent and Andrea Fuschetti, and the A.D. Fuschetti

Living Trust move this Court to declare that Isle of Wight County owns drainage easements in

the Brewers Creek Subdivision of Isle of Wight County. The developer promised, and the

County accepted, the broadest rights in the storm water infrastructure for public benefit which

the County accepted and continuously uses for public drainage since 1989. *See Otis Brock et al.*

*v. Cnty. Isle Wight*, Case No.: 2:21-cv-99, Dkt. 33, 38, 40 (E.D. Va. 2023).

The County accepted, by plat, use, and estoppel the rights, use, responsibilities, and

maintenance, of drainage easement for the benefit of the entire subdivision. By failing to

replenish rip rap and maintain drainage infrastructure, common and typical putative class

member Vincent Fuschetti suffers property avulsion, erosion, and damage due to County policy

disproportionate to greater common public good. *ACGS Marine*,

**NATURE OF ACTION AND JURISDICTION**

1.      The characterization of types of rights in, or to, real property is akin to a "bundle

of sticks" where each stick represents a separate property right. *United States v. Craft*, 535 U.S.

274, 278 (2002) (O'Connor, J.) ("A common idiom describes property as a 'bundle of sticks' – a

collection of individual rights") (citations omitted); *Columbia Gas Transmission, LLC v. Grove*

*Ave. Developers, Inc.*, 357 F. Supp. 3d 506, 520 (E.D. Va. 2019) (Davis, C.J.) (referring to owner and pipeline company dividing "the 'bundle of sticks' attendant to land ownership").

2.      This civil action under 28 U.S.C. § 2201 seeks a declaration that Isle of Wight County owns the drainage easements dedicated on the Brewer's Creek Subdivision Plat, and under 33 U.S.C. § 1365 alleging the County is discharging unreasonable and unnecessary sediment into waters of the United States in violation of the Clean Water Act.

3.      The elective policy decision to disclaim maintenance of storm water easements to state waters in 2016 caused foreseeable damage to existing storm water drainage infrastructure.

4.      The immediate concern from initial collapse of storm water drainage outlets stemmed from sediment impairing navigation of riparian rights of way abutting the subdivision.

5.      The County uses the easement on the Fuschettis' property for stormwater retention and drainage.  The County's use of the Fuschettis' property causes erosion and subsidence outside of the platted easement that the County refuses to maintain.

6.      Other members of the subdivision suffer from failed infrastructure meant to prevent their properties from flooding and damage during rain events.

7.      The class suffers from failure of the County's drainage infrastructure.

8.      In 1989, the owner of the Brewer's Creek subdivision promised the County broad easement rights in the Brewer's Creek subdivision.  After inspection and consultation with VDOT, the County accepted the developer's promises and recorded the covenant agreement and incorporated the covenants by reference in the recordation of the Brewer's Creek subdivision. Declaration of Covenants and Restrictions for Brewer's Creek attached as Exhibit A.

9.      The subdivision plat incorporates the covenants by reference:

2

For Restrictions See: Deed Book 354-20

.For Deed see Deed Book 335-146

10.     The recorded plat delineates a drainage easement, incorporating restrictions meant to reserve drainage easements for public use, over a portion of the Fuschettis' and other similarly situated owners' private property.  Subdivision of Brewer's Creek Plat attached as Exhibit B:



11.     The plat incorporates by reference a covenant promising the County's specific right to a use in real property - a drainage easement for public use and benefit.  The County accepted the promises negotiated by the developer and recorded the plat as pubic record.  *Id.*

12.     In 1991, the County's Board of Supervisors adopted "A Resolution Requesting the Commission of the Virginia Department of Transportation to Accept and Include Marsh View Court and Deep Water Way into the Virginia State Secondary Road System" ("Resolution").  Resolution attached as Exhibit C.

13.     In addition to the streets, the Resolution offered VDOT maintenance of "necessary" drainage easements noted on the Brewer's Creek Subdivision Plat:

Unrestricted rights of way fifty (50) feet in width and additional right of way for the cul-de-sacs, along with the necessary drainage easements have been provided and are on record in the Office of the Clerk of the Circuit Court at Isle of Wight County in Plat Book No. 14, Pages 5, 6, 7, Slide 375, April 3, 1989.

14.     Since 1989, the County discharged stormwater consistent with the plat on record.

15.     The easement removes public stormwater from the public highway and discharges it into the Creer Creek, a tributary of the Brewer's and Chuckatuck Creek Watershed.

16.     At all times relevant from 2010-2013 the County maintained this infrastructure.

17.     The County collects a storm water fee for its costs of storm water discharge.

18.     In 2018, the discharge outlet of the buried stormwater pipe failed for lack of rock support.  The County refused to make repairs claiming it does not own the stormwater easement.

19.     In 2014-2015 the County made systematic efforts to disclaim ownership of drainage easements in urbanized areas of the County including on the basis of false allegations.

20.     To avoid MS4 permitting, the County avoided any semblance of ownership.

21.     In 2018, left unaddressed, the failure to replenish rip rap caused the reinforced concrete pipe to lose support and collapse.  The collapse continues to cause erosion and soil loss.  The erosion caused, and causes, sediment and debris deposits in Chuckatuck Creek.

22.     The continuing, and ongoing, pipe collapse creates a widening hole on private property.  The collapse will continue to erode private property as the County refuses to make repairs.  The stormwater, now in an open ditch, erodes the stabilizing soil from private property outside the easement and continues to cause a buildup of sediment in Chuckatuck Creek.

23.     Owners with easements in the subdivision suffer a disproportionate loss to the public burden of drainage easement from the County's abandonment of maintenance of the underground storage system.  The County refuses to maintain or repair the drainage easement.

24.     The County uses and operates a stormwater system causing damage for both the servient property in disproportionate way to the rest of the subdivision property owners.

4

## CLASS REPRESENTATIONS

25.     The Putative Class Plaintiffs bring this class action on behalf of themselves and all owners of real property in the Brewers Creek subdivision asserting the taking and damaging of valuable property interests from an elected decision to abandon ownership and maintenance of the underground drainage easements in the Brewer's Creek Subdivision to avoid Clean Water Act.  Corporate acts averting compliance with the Clean Water Act causes avulsion, erosion, and unstable soils on private property.  Putative class action plaintiffs lose investments in land.

26.     A class action is a superior means, the only practicable means, by which Putative Class Plaintiffs and unknown class members can challenge the County's taking and damaging of private property through avulsion and storm water erosion without just compensation.

27.     This action, a class action, pursuant to Rule 23(a), Rule 23(b)(1) and Rule 21(b)(3) of the Federal Rules of Civil Procedure includes numerosity, commonality, typicality, and adequacy threshold requirements.  Putative class action plaintiffs share a common outcome.

28.     The class is numerous and exactly unknown to Putative Class Plaintiffs, they believe that the number of affected property owners exceeds twelve (12) before including riparian interests affected by sediment deposits at which the number exceeds forty (40).

29.     Putative Class Plaintiffs' claims are typical of the claims of the class because they like all class members suffer property damage from the County's abandonment of property interests and maintenance responsibility.  Their interests do not conflict with one another.

30.     Putative Class Plaintiffs would represent the class.  Putative Class Plaintiffs will fully and adequately protect the interests of the class members.  They have retained counsel who is experienced and competent in property rights and condemnation litigation.

31.     A class action would be superior to all other available methods for the fair and efficient adjudication of this controversy.  Putative Class Plaintiffs know of no difficulty that would preclude its maintenance as a class action.

32.     The prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudication could establish incompatible standards of conduct for the County under the laws alleged herein.  Adjudications with respect to individual class members could be dispositive of the interests of other members not party to the individual actions or could substantially impair their ability to protect their interests.  The source of the property rights owned by the County are the same for all putative class members – the drainage easement dedicated by express language on the plat and the County's express written acceptance and continues use for forty (40) years.

33.     Questions of law and fact, in common to the class, predominate over any questions which may affect only individual members in that the easement rights in question are common to the class and the same series of actions constituting federal and state law violations affect the class the same.  Among common questions or law and fact are:

    a.     Whether the County owns the drainage easements in the Brewer's Creek subdivision by dedication, plat, or any other method of acquiring property rights; and

    b.     Whether the City's abandonment of property interests and failure to maintain its infrastructure causes damage to servient estates requiring compensation.

34.     The only issues in this matter that are not common are the amounts of compensation due to each class member upon finding of liability.  Jury trials could occur on a case-by-case basis or as a class as the interests of justice serve in awarding just compensation.

## PARTIES AND JURISDICTION

35.    Putative Class Plaintiffs own real property in the Brewers Creek subdivision in Isle of Wight County and represent the *in rem* interests of real property taken and damaged.

36.    Vincent and Andrea Fuschetti are citizens and residents of Isle of Wight County. The Fuschettis own property identified by Isle of Wight County, Virginia as lot 6 of the Brewers Creek Subdivision and Tax Map No.: 34H-01-006.

37.    The A.D. Fuschetti Living Trust is an entity formed by Ms. Fuschetti to hold property on behalf of her designated beneficiaries and recorded owner of the subject property.

38.    The County is a state agency authorized to operate stormwater retention and drainage infrastructure.  This Court's jurisdiction is proper under 28 U.S.C. § 1331.

39.    Venue is proper as the real property at issue is located in Isle of Wight County which is within the jurisdiction of the Norfolk Division of the Eastern District of Virginia.

## FACTUAL ALLEGATIONS

40.    On April 3, 1989, an agent for the Board of Supervisors of Isle of Wight County executed a plat of Subdivision of Brewers Creek and recorded it in the Clerk's Office of the Isle of Wight County Circuit Court creating a fifty (50) lot residential subdivision ( "Plat").  Ex. B.

41.    The Plat reserves several easements including three (3) twenty-foot drainage easements, one (1) twenty-foot easement for future water line extension; and one (1) fifteen-foot easement for water treatment plant discharge.

42.    The twenty (20) foot drainage easement, the putative real property *in rem* plaintiff ("the Easement"), straddles lots 6 and 7 and reads as "20' drainage easement" on the Plat.

43.    The Easement contemplates underground conveyance of stormwater from Marsh View Court, a public street, to a natural ravine which empties into Chuckatuck Creek.  Ex. A.

44.     The Plat incorporates by reference the Declaration of Covenants and Restrictions of Brewer's Creek ("Covenants"), recorded at Deed Book 354, Page 20.

45.     The Covenants promised the County the right to use the Easement for public benefit and retained the right to relocate the easements in the event of re-subdivision:

> 18. Easements. Easements shown on the aforesaid plat for streets, drainage and utilities are for the benefit of the owners of all lots in said plat and may be freely used by the County of Isle of Wight for the benefit of the owners of said lots and their assigns, as well as the general public, provided, however, that in any resubdivision or rearrangement of said lots, Carpenter Development Corporation retains the right to relocate the said easements to conform to such resubdivision or rearrangement.

Ex. A.

46.     The County signed, approved, and recorded the Plat to create a legal subdivision.

47.     On November 21, 1991, the Isle of Wight County Board of Supervisors passed "A Resolution Requesting the Commission of the Virginia Department of Transportation to Accept and Include Marsh View Court and Deep Water Way into the Virginia State Secondary Road System" which resolved to ask VDOT to accept Marsh View Court for maintenance and offered "the necessary drainage easements" noted on the subdivision plat showing ownership rights.

48.     Marsh View Court includes raised curbing, drop inlets, and other improvements designed to direct the drainage of stormwater and other precipitation out of the public road and into the underground Easement.  The Easement conveyed stormwater underground through the Fuschettis' property to drain into a natural ravine which drains into Chuckatuck Creek.

8

49.    In 2013, the County began reaching out to the Virginia Department of Environmental Quality ("DEQ") seeking to relieve itself of responsibility for maintaining drainage infrastructure as had Spotsylvania County.

50.    The DEQ advised the County that Spotsylvania escaped the MS4 program because it did not own any easements or stormwater infrastructure and because the County did

---

**From:** Winn, Derick (DEQ)
**Sent:** Friday, February 21, 2014 1:02 PM
**To:** 'melissa.lindgren@isleofwightus.net'
**Subject:** Isle of Wight Storm Sewer System

Melissa,

I've reviewed the county's MS4 program plan and a few annual reports and it appears there are about 45 outfalls being monitored each year and the known easements drain about 100 acres. Spotsylvania's lack of easements and any other stormwater infrastructure in the UA is what allowed the county terminate permit coverage.

I'm not too familiar with how easements work or the legal implications of easement ownership and maintenance requirements, but I as long as the county continues to own or operate these easements I think MS4 permit coverage will be applicable.

Let me know if you have any questions,

Derick

---

own easements and infrastructure, the MS4 permit applied.  Email from Derick Winn with DEQ dated March 8, 2014, forwarding email of February 21, 2014, attached as Exhibit D.

51.    In November 2014, the County contacted the DEQ asking to meet to discuss delisting from MS4 on the grounds the County did not own or maintain any public drainage "system."  DEQ indicated it still believed the County owned a regulated system qualifying it for the MS4.  Email from Jaime Bauer dated November 26, 2014, attached as Exhibit E ("Isle of

Wight County contacted me yesterday about … applicability of the MS4 Program … .  They have raised this issue in the past and … they have a regulated system.").

52.     On December 19, 2014, the County provided a map of drainage easements it owns, including those in the Brewer's Creek subdivision attached as Exhibit F (noticing DEQ of County position on MS4 with 6MB of data two weeks before meeting planned for January 6, 2015).  The County realized its unintended error admitting ownership of these easements and sent another map with those easements removed.  Email dated January 20 attached as Ex. G:

---

**From:** Bauer, Jaime (DEQ)
**Sent:** Tuesday, January 20, 2015 2:15 PM
**To:** Brockenbrough, Allan (DEQ); Cunningham, Frederick (DEQ)
**Subject:** FW: Most Recent IOW Drainage Basin Maps

Updated info from Isle of Wight.

Jaime L. Bauer | Environmental Specialist II | DEQ  | 804-698-4416| jaime.bauer@deq.virginia.gov

---

**From:** Donald N. Jennings [mailto:donald.jennings@isleofwightus.net]
**Sent:** Thursday, January 15, 2015 4:43 PM
**To:** Bauer, Jaime (DEQ)
**Cc:** Melissa A. Lindgren; Pomeroy, Chris
**Subject:** FW: Most Recent IOW Drainage Basin Maps

Jamie,

Good afternoon.

I wanted to share the attached exhibit with you.  We revised it to remove some area that we erroneously counted before and we also labeled the impaired waterways.  We also added to columns to the table to identify the total shaded area that exists within the VDOT right-of-way as well as the impervious area within the right-of-way.  The column head of 'VDOT Easement Drainage Areas' really needs to be changed to indicate VDOT right-of-way area, since the drainage area to the right-of-way would be much larger than the area measured and tabulated.

I hope this helps paint a better picture of the urbanized area within the County.

---

53.     On or about June 15, 2015, the County again replaced, by email, the maps provided to the DEQ to prevent further dissemination of maps showing the Brewer's Creek Subdivision easements as County assets and ownership interests.  Email of June 15, 2015.

54.    The County Attorney's represented to the DEQ that the County cannot access the easements.  Email from Jaime Bauer with DEQ dated August 3, 2015, attached as Exhibit H. The County can access the Brewer's Creek subdivision easements.  Ex. A, B, C. I; *see also* *Brock,* Case No.: 2:21-cv-99, Dkt. 33, p. 5 (citing 33-2, p. 71-72) (agreeing in corporate deposition County can access the easement and make the infrastructure repairs).

| | |
|---|---|
| **From:** | Bauer, Jaime (DEQ) |
| **To:** | Cunningham, Frederick (DEQ); Brockenbrough, Allan (DEQ) |
| **Cc:** | Sauer, Mark (DEQ); Mckercher, Elizabeth (DEQ) |
| **Subject:** | FW: Inquiry Posed at 06/04/15 |
| **Date:** | Monday, August 3, 2015 1:36:24 PM |
| **Attachments:** | Isle of Wight Response Letter to DCR 1.17.2013.pdf |
| | RollingwoodSub_Plat00010174004.pdf |
| | ChuckatuckOverview_MS4s_update.jpg |
| | 3.1 HUC42.pdf |
| | FW Discuss Isle of Wight Questions.msg |

I apologize for the extra large size of this email, but I wanted to give you guys a heads up on the email below and attached follow up email that TRO's TMDL coordinator received. Note that the most recent email includes a letter that was sent to Melanie requesting a meeting. The summary as I understand it is that when the Chuckatuck and Brewers Creek TMDL was developed a while back, they confirmed the Isle of Wight MS4 regulated area with the County, and IOW received a WLA. Since that time, the IOW staff have re-evaluated what they own or operate as a regulated MS4 and have come to the conclusion that they do not operate an MS4 in the impaired watershed.  IOW has asked DEQ-TRO TMDL staff to absolve them of any responsibilities for the WLA.

According to the County records, IOW was dedicated drainage easements in the subdivision; however, according to their County attorney, there was an error in the dedication and they cannot access the easements.

55.    In or around 2019, the Fuschettis noticed a sinkhole within the easement.  The Fuschettis' complaints to the County caused the County to produce a pamphlet on the County's "orphaned outfalls" problem.  Isle of Wight County, *Orphaned Outfalls in Rural Virginia Localities* (Oct. 18, 2019) attached as Exhibit I.  This paper discussed stormwater easements platted in an era before County subdivision ordinances required that a developer create a Homeowners Association entity agreeing to maintain storm water easements.

56.     The County position paper refers to the Easement as a "generic drainage easement[]" and admits that a "lack of preventive maintenance" causes "high velocity stormwater flows" to eat "away at the bedding beneath the original pipe" and leave "joints … undermined … and effectively discarded in an unstable and degrading channel." *Id.* at 3.

57.     The County concedes the foreseeable results leave affected property "unsellable." *Id.* at 5.  The County claims concern that County responsibility for the Easement could cause the County "risk of being subject to a perpetual and expensive MS4 permit." *Id.* at 3.

58.     The County finds a "lack of incentive for … the locality to fund such repairs." *Id.* at 5 (enunciating County policy to pass burden of repairs, estimated at $150,000, to landowners).

59.     Prior to this 2014-2015 policy change, the County did pay contractors to replace failed storm drain outfalls – including the adjacent subdivision on Oyster Court in 2010.  Drain outfall replacement proposal dated June 16, 2010, attached as Exhibit J (bidding excavation, replacement of subterranean reinforced concrete pipe used for public drainage, and backfill).

60.     The County used the Easement to drain stormwater since 1992 and still uses it to drain storm water today.  The lack of replacement of rip rap at the edge of the pipe causes the pipe section to fail at its joint.  Continued neglect causes continued collapse of pipe at joints.

61.     The subsurface broken pipes cause sinkholes in the Fuschettis' yard and those similarly situated.  The easement, which once included a subsurface pipe, now features an open hole and increasing enlargement as used for public drainage as a natural ravine.  The private property is no longer buildable for single-family residential uses.

62.     The County policy stormwater, erosion, and avulsion of private property outside of platted drainage easements.  Uncontained, the flow of water causes erosion of soils, inside and outside, of the Easement.  Chuckatuck Creek riparian owners complain of sediment.

63.     The sinkhole exceeds the limits of the existing Easement and continues to grow.

64.     Each discharge of stormwater inflicts and causes increasing and accruing erosion and degradation of private property for the public use of storm water drainage for the public use.

65.     The sinkhole is more than twenty feet wide and more than ten feet deep.

66.     The Fuschettis and similarly situated owners solicited County staff for assistance and the County asked for a lawsuit.  *See* Ex. I at 6 (asking the courts to decide).

67.     The County's operation and maintenance of its easement for stormwater drainage system now exceeds the bounds of the platted Easement designed to contain underground stormwater discharge.  The public use of private property requires just compensation to owners.

68.     The County's expansion of its Easement, without legal title, causes negative effects on the putative class's ability to utilize, enjoy, or convey their property.  The conditions impair the property value, decrease liquidity of investment, and create risks and liabilities.

69.     Real property owners in the Brewers Creek subdivision suffer loss of value.

70.     The County disclaims any interest in and to the Easement, including its original easement, for the purpose of providing stormwater drainage for the public right-of-way, yet the County continues to use the Property to achieve its duty to provide public stormwater drainage.

71.     The County admits it is "intentionally avoiding any semblance of drainage system ownership to remain unpermitted."  Ex. I at 4.  This policy decision takes private land without payment outside of platted easements accepted by the County for public drainage uses.

### **FIRST CAUSE OF ACTION**
### **Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201 and 2202**

72.     All allegations set forth in this Complaint are incorporated by reference.

73.     Under Virginia common law, dedication may be express or implied.  *Hampton v. Stieffen*, 202 Va. 777, 784 (1961).  To express dedication under the common law, no writing or

13

special form of conveyance is required, just unequivocal evidence of intent to dedicate.  *Brown v. Tazewell Cnty. Water & Sewage Auth.*, 226 Va. 125, 129 (1983).  Expressions of intent to dedicate include deeds, words written on a plat, *see Burns v. Bd. of Supervisors*, 226 Va. 506, 516 (1984) (finding common law dedication based on owner's statement of dedication on plat), and drawings on a plat, *Ocean Island Inn, Inc. v. Va. Beach*, 216 Va. 474, 477 (1975) (holding recording subdivision plat manifested intent to dedicate platted easements). Virginia also provided a statute, Va. Code § 15.1-478, for express dedication by plat as of 1989.

74.    Common law dedication by implication – or dedication by estoppel – arises when context surrounding the conduct and reliance "the law will imply the intent to dedicate even where there is an entire absence thereof in the mind of the landowner, and even against a contrary intent."  *Stieffen*, 202 Va. at 784-85 (quoting *Keppler v. Richmond*, 124 Va. 592, 611 (1919)).  Dedication by estoppel is complete upon formal acceptance or "such long use by the public as to render its reclamation unjust and improper . . . ." *Id.* at 784 (quoting *Buntin v. Danville*, 93 Va. 200, 204 (1896)).

75.    Dedication is possible by prescription if the sovereign makes continuous use of the property for the prescriptive period of twenty (20) years. *Dykes v. Friends of the C.C.C. Rd.*, 283 Va. 306, 315 (2012); *City of Staunton v. Augusta Corp.*, 169 Va. 424, 433 (1937).

76.    "Since a completed dedication imposes the burden of maintenance and potential tort liability upon the public, a dedication does not become complete until the public or competent public authority manifests an intent to accept the offer."  *Ocean Island Inn*, 216 Va. at 477.  As with an offer of dedication, acceptance may be made expressly or by implication. *Id.* Express acceptance can be seen where a government agent signs and approves the document offering the dedication. *See, e.g., Burns*, 226 Va. at 516 (finding county accepted easements

offered in plat when its officials approved and signed before recordation).  Implied acceptance

arises from "public use[] of requisite character" or from an "exercise of jurisdiction or dominion

by the governing authority.  *Ocean Island Inn*, 216 Va. 477 (internal quotation marks omitted).

77.    Partial acceptance of an offer of a platted dedication will constitute acceptance of

the whole offer where the part accepted is substantial enough to "evince an intent to accept the

comprehensive scheme of public use[] reflected in the plat" unless the sovereign shows intent to

limit the acceptance.  *Barter Found., Inc. v. Widener*, 267 Va. 80, 90 (2004); *Ocean Island Inn*,

216 Va. at 479.  Without formal acceptance, dedication is complete when public use makes the

landowner's reclamation unjust and improper.  *Stieffen*, 202 Va. at 784 (quoting *Buntin*, 93 Va.

at 204 (finding dedication where "there has been acceptance by the competent authority, or such

long use by the public as to render its reclamation unjust or improper")).

78.    The Brewer's Creek Subdivision plat expresses that easements are dedicated to

public use "as noted", notes a 20' drainage easement along the eastern border of Lot 6 and Lot 7,

and incorporates Covenants which promise County public use of drainage easements marked on

the plat.  Ex. A, B.  Similarly situated owners serve as the servient tract to similar easements.

79.    The submission of the subdivider's plat showing a twenty-foot drainage easement

half on the Fuschettis' property and dedicating easements noted on the drawing constitutes a

common law offer of dedication of easement by subdivider.  *Ocean Island Inn*, 216 Va. at 477.

80.    The plat reflects acceptance of the offer of dedication by incorporating Covenants

which promise the County the broadest rights, including access, to use the drainage easement.

81.    The County's acceptance and recordation of the plat is unequivocal acceptance of

the dedication required for common law dedication.  *See, e.g., Burns*, 226 Va. at 516.

82.     Va. Code § 15.1-478 allowed easements for streets, alleys, or other public uses to create a public right of passage to be dedicated by plat.

83.     The Subdivision plat dedicates not only streets and alleys, but also walks, parks, and other open spaces, showing an intent to dedicate more than contemplated by statute.

84.     The County's execution and recordation of the plat is unequivocal acceptance of the dedication required for dedication by plat.  *See* Va. Code § 15.1-478 (1978) (superseded in the Code by § 15.2-2265); *see also Ocean Island*, 216 Va. at 479 (holding acceptance of part constitutes acceptance of the whole comprehensive scheme of public user reflected in the plat).

85.     County's use of the easement stretches thirty (30) years.  *Stieffen*, 202 Va. at 784.

86.     The County further shows acceptance of the offer of dedication by using it for public stormwater drainage for over twenty years.  *See Dykes v. Friends of the C.C.C. Rd*., 283 Va. 306, 315 (2012) ("When the dedication is implied from the long and continuous use by the public for the prescriptive period of twenty years, and there has been acceptance by competent authority[,] title to a right-of-way . . . may be obtained by prescription." (quoting *Bd. of Supervisors of Tazewell Cnty. v. Norfolk and W. Ry. Co.*, 119 Va. 763, 773 (1916)); *Lawrence v. Nat'l Fruit Prod. Co*., 43 Va. Cir. 516, 522 (1997) ("when a way has been ... worked by road officials as a public road and used by the public as such continuously for a period of twenty years, proof of these facts shall be conclusive evidence that the same is a public road").

87.     The County demonstrated its understanding of its dominion over the easement when it offered maintenance responsibilities to VDOT. *See Ocean Island Inn*, 216 Va. at 477 (holding that exercise of dominion over streets dedicated on plat but never formally accepted constituted acceptance given that the whole subdivision works together); *Brockenbrough's Ex'x v. Brockenbrough's Adm'r*, 72 Va. 580, 592 (1879) ("It is a maxim of the common law that a

16

man cannot grant a thing which he has not -- *nemo dat quod non habet*. . . . the vendor must have

a present property, either actual or potential, in the thing sold."); *Larson v. Acacia Fed. Sav.*

*Bank*, 29 Va. Cir. 317, 318 (Fairfax Cnty. 1992) ("According to the principal of *nemo dat*,

assignors cannot transfer rights which they do not own and the assignee takes the interest subject

to all prior equities between the previous parties").

      88.    The County fails to enforce any maintenance agreement or enlist support it may

want from VDOT and instead seeks bailout funding from the Commonwealth by lobbying to

legislate a solution to their self-created problem: avoiding state law and MS4 responsibilities.

      89.    This Court should declare, pursuant to 28 U.S.C. § 2201, that the County owns

the drainage easement it accepted by recording the developer's dedication with the plat.  The

Court should order necessary and proper relief pursuant to 28 U.S.C. § 2202.

## PRAYER FOR RELIEF

      The County's signing and recording of the Brewer's Creek Subdivision plat showed an

unequivocal acceptance of the drainage easements platted and promised in the Covenants.  The

County's failure to maintain the easement has damaged and threatens damage to Putative Class

Plaintiffs' property rights.  Putative Class Plaintiffs request this Court award the following relief:

A.    Declare pursuant to 28 U.S.C. § 2201 that the County owns the drainage

        easements shown on the Brewers Creek Subdivision plat;

B.    set trial by jury to determine liability for Fifth Amendment taking violations and

        compensation for the County's damaging and taking of private property interests;

C.    Award Putative Class Plaintiffs their reasonable costs, attorney's fees, and expert

        fees, incurred in prosecuting this action according to 28 U.S.C. § 1983 for

        deprivation of fundamental civil rights under the color of authority; and

D.      Award any other relief as necessary to obtain the interests of justice.

## JURY DEMAND

The Putative Class Plaintiffs demand a trial by jury on all triable counts including County liability for avulsion, erosion, and use of their property and any compensation owed for increased burden of public use due to new County policy denying reality of County acceptance in 1989.

**VINCENT & ANDREA FUSCHETTI**
**A.D. FUSCHETTI LIVING TRUST**
**TAX MAP: 34H-01-006**


By  */s/ Joseph V. Sherman*
        Joseph V. Sherman

Joseph V. Sherman (VSB No. 86099)
JOSEPH V. SHERMAN, P.C.
324 West Freemason Street
Norfolk, Virginia 23510
Telephone: (757) 350-8308
Facsimile: (757) 351-4663
joe@lawfirmJVS.com